# AFFIDAVIT IN SUPPORT SEARCH WARRANT

I, Samuel Brown, being first duly sworn, state as follows:

## A. Agent Experience

1. I am a Special Agent ("SA") with the United States Department of Justice, Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"), and have been since July of 2014. I am currently assigned to the Burlington, Vermont Field Office in the Boston Field Division. I attended the Federal Law Enforcement Training Center ("FLETC") in Glynco, Georgia full-time for six-and-a-half months. While at FLETC, I received training in the practices and methods of illegal firearm possessors, firearm traffickers, and related federal criminal statutes.

2. As a Special Agent, I have conducted and/or participated in several investigations involving state and Federal firearm and controlled substance violations. I have interviewed multiple victims, witnesses, and suspects regarding various types of criminal activity. I have also served search warrants for various crimes and have made criminal arrests for firearm and controlled substance violations. Prior to becoming an ATF Special Agent, I was a Law Enforcement Ranger with the United States National Park Service for approximately seven years. As a Ranger, I participated in state and Federal investigations involving possession of illegal weapons (including firearms) and possession of controlled substances. I also conducted numerous investigative stops and probable cause searches of people and vehicles. I participated in physical surveillance operations and in the service of state and Federal arrest warrants.

### B. Subject Telephones

3. Pursuant to Federal Rule of Criminal Procedure 41, I submit this Affidavit in support of a warrant authorizing the seizure of and data extraction from:

   a. *Subject Telephone 1* – a white Apple iPhone, assigned ATF evidence barcode number 2579391, and currently in the custody of the ATF Field Office in Burlington, Vermont; and

   b. *Subject Telephone 2* – a white Apple iPhone, assigned ATF evidence barcode number 2579427, and currently in the custody of the ATF Field Office in Burlington, Vermont.

(collectively, the "Subject Telephones"). As set forth herein, there is probable cause to believe that the Subject Telephones contain evidence, fruits, and instrumentalities of violations of federal law, including 21 U.S.C. § 841.

### C. Sources of Information

4. The facts set forth in this affidavit are based on my personal observations and knowledge, and may also be based on: (a) my training and experience, (b) information obtained from other individuals participating in the investigation, (c) reports and/or business records, (d) recorded conversations or text messages, and (e) communications with other individuals who have personal knowledge of the events and circumstances described herein. Since this affidavit is being submitted for the limited purpose of establishing probable cause, I have not included in this affidavit every detail of the investigation. Rather, I have set forth facts that I believe are sufficient to establish probable cause for the issuance of the requested search warrant. Unless specifically indicated otherwise, any conversations and statements described in this affidavit are related in substance and in part only.

**D. Cellular Telephones**

5. Through my training and experience, I know:

   a. That people involved in the illegal possession, distribution, and use of controlled substances (such as the subject of this investigation), commonly use cell phones to conduct their illegal business dealings. Individuals involved in drug dealing and the drug trade use cell phones: (a) to communicate via voice and written text messaging with co-conspirators, suppliers, and customers (among others) about their criminal activities; (b) to photograph, audio record, and video record themselves possessing or communicating about drugs and other contraband; (c) to search the Internet to research firearms, laws, and news articles about law enforcement investigations (among other search topics); and (d) to map or use GPS apps to navigate to and from locations where criminal activity takes place.

   b. That many cell phones have advanced capabilities, including: Internet browsing, text and e-mail, photography and video storage, notes, calendars, and data file storage. I am also aware, through training and experience, that people commonly use cell phones to communicate with each other via voice, direct connect, text message, and e-mail; store valuable data such as names and addresses; obtain and store directions and maps; search the Internet and capture audio, image, and video files.

   c. That drug traffickers and money launderers frequently use cellular telephones and keep a list of names and numbers of customers, suppliers, and coconspirators in the electronic address books of their cellular

telephones. Such cell phones will also carry information in a SIM (Subscriber Identity Module) or SD (Secure Digital memory) card, or some other type of electronic storage card or drive, which will reveal that information along with the number of the cell phone and other information indicating the identity of the user.

d. That drug traffickers and money launderers use cellular telephones to communicate with each other via voice, direct connect, text message, and e-mail; store valuable data such as names, addresses, and telephone numbers of co-conspirators; obtain and store directions and maps; maintain photographs of criminal associates; search the Internet; and capture audio, image, and video files. Records of these activities are often stored in the memory of cellular telephones.

e. That drug traffickers frequently use and possess firearms in connection with their drug trafficking activities and use and possess firearms to protect their drugs and themselves while distributing drugs. As a result, guns are tools of the drug trade. In that regard, drug traffickers will regularly pose for photographs while in possession of drugs and firearms for posting on social media sites or for personal display in their residences. I have learned through my training and experience that drug traffickers will maintain notes, ledgers, journals, and/or documents for the purpose of tracking their drug purchases/sales and monetary proceeds. I have also learned that drug traffickers utilize cell phones, computers, and other electronic media devices to coordinate the purchase/sale/distribution of drugs.

In short, cell phones are vital instruments to drug traffickers and may contain many different types of significant evidence of their criminal activities.

### E. Forensic Analysis

6. If the instant search warrant is granted, the Subject Telephones will be examined by a law enforcement officer or digital forensic specialist. The examination of the Subject Telephones will include a physical search of the phone via the use of a proprietary data extraction device. This type of search will likely result in the recovery of data that has been previously deleted (including the recovery of deleted text messages and/or web browsing data). In most cases previously-deleted data can be recovered, unless the data has been over-written by the addition of new content on the cell phone. I know that most modern phones (especially smart phones) have large storage capacities that dramatically increase the likelihood that the previously-deleted data has not been over-written with new content and is, therefore, recoverable.

7. As further described in Attachment A, this application seeks permission to locate not only digital files that might serve as direct evidence of the crimes described on the warrant, but also for forensic electronic evidence that establishes how the Subject Telephones was used, the purpose of its use, who used it, and when. There is probable cause to believe this forensic electronic evidence will be on the Subject Telephones because:

   a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how an electronic device was used, the purpose of its use, who used it, and when.

d. The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

**F. Probable Cause**

8. As set forth below, I believe that the Subject Telephones were used by Hussein Mubarak and that probable cause exists to believe they contain information and data related to drug trafficking.

6

## Mubarak's Past iPhone

9. On March 5, 2021, at approximately 2:05 a.m., the Burlington Police Department ("BPD") were dispatched to the area of 59 Walnut Street in Burlington, Vermont based on a 911 call of shots being fired. Upon arrival, BPD found that an individual with the initials T.B. had been shot in the leg.

10. Based on its investigation, BPD identified Zakaria Hassan as the shooting suspect and BPD arrested Hassan on March 5, 2021. At the time of his arrest, Hassan possessed a Rock Island Arms Armscor of the Philippines model M1911-A1 .45 caliber pistol.

11. After Hassan waived his Constitutional rights, BPD interviewed Hassan. Thereafter, I joined BPD Detective Jaime Morris (replacing another detective) to further interview Hassan. During that portion of the interview, Hassan said that:

   a. Hassan met Mubarak around February 5, 2021, at a residence in Burlington;

   b. Mubarak became Hassan's "weed connection;"

   c. Mubarak sold Hassan marijuana for $40 per "slice" and had marijuana on him all the time;[1]

   d. Mubarak also sold a variety of pills;

   e. Mubarak called himself a "gangster;"

   f. Hassan had seen Mubarak with a firearm on three occasions;

   g. Mubarak carried firearms for protection of his drug distribution business;

---

[1] I know that a "slice" commonly refers to an eighth of an ounce of marijuana.

    h. Regarding the shooting, Hassan's memory was incomplete due to taking pills provided to him by Mubarak, but he recalled removing the firearm from Mubarak's backpack (but does not recall anything more about the firearm).

12. According to T.B., Mubarak was at T.B.'s residence during the shooting.

13. In connection with its investigation, BPD obtained consent from Mubarak to search his Apple iPhone 11 (IMEI No. 356543107086455). On March 5, 2021, I examined data from Mubarak's iPhone and saw the photograph of a firearm that appeared substantially similar to the gun that BPD recovered from Hassan. Importantly, the photograph was actually taken with Mubarak's iPhone and had a date stamp of February 16, 2021.

14. On May 24, 2021, ATF SA Brian Wood further examined Mubarak's iPhone and found that it contained:

    a. A video depicting what appears to be marijuana on a scale with a weight of "14.56 grams." Importantly, the video was taken with Mubarak's phone and had a date stamp of February 23, 2021.

    b. A video titled "GANG GANG GANG YOU AIN'T FINNA BANG BITCH," that had been screen recorded from the multimedia messaging app Snapchat. In the video, three men are depicted in a vehicle, the two passengers appear to be holding large quantities of U.S. currency and the driver appears to be Mubarak holding a firearm pointed at the camera (see a still image from the video).

8



## May 14, 2021 Assault

15. On May 14, 2021, BPD arrested Mubarak for assault. While being searched incident to arrest, BPD recovered from Mubarak two baggies of suspected crack cocaine weighing a total of approximately 28 grams and $313.[2] The suspected crack cocaine later field-tested positive for cocaine base. BPD also found three cell phones (including two iPhones): BPD recovered two phones from Mubarak's pocket and one phone from the ground near Mubarak. Ultimately, BPD returned

---

[2] Based on my training and experience, I know that 28 grams of crack cocaine is consistent with distribution.

9

the three phones to Mubarak without searching them. Notably, BPD returned two iPhones to Mubarak and the Subject Telephones are iPhones.

### Subject Telephones

16. Six days later, on May 20, 2021, at approximately 4:58 a.m., BPD responded to a call of a male attempting to enter an apartment at 103 Walnut Street in Burlington, Vermont. Upon arrival, BPD Officer Joseph Corrow saw Mubarak, who appeared to be impaired by drugs and/or alcohol and could barely stand.[3] Thereafter, BPD Officer Corrow learned that on May 14, 2021, Judge John Pacht of the Chittenden County (Vermont) Superior Court ordered that Mubarak not buy, have, or use unprescribed drugs or alcohol and ordered that Mubarak have a curfew, requiring Mubarak to remain in a residence on Riverside Avenue in Burlington from 8:00 p.m. to 6:00 a.m.

17. BPD arrested Mubarak for violating the conditions of release and recovered from Mubarak: (a) the Subject Telephones, (b) $500, and (c) a green pill (that may be Alprazolam/Xanax). On May 25, 2021, I took custody of the Subject Telephones from BPD, logged them as items of evidence, and stored them in the evidence vault at the ATF's Burlington Field Office.

18. Based on the information set forth above, I believe the Subject Telephones contain evidence, fruits, and instrumentalities of drug trafficking because: (a) according to Hassan, Mubarak sold drugs and Mubarak used firearms to protect his drug distribution business; (b) pursuant to a consent search, evidence of drug dealing and firearm possession were found on Mubarak's past iPhone; (c) on May 14, 2021, BPD arrested Mubarak with a distribution amount of crack cocaine and

---

[3] Mubarak claimed that he had not taken any substances but had been awake for 5 days straight. Later, Mubarak stated he had taken one Xanax pill.

three phones, including two iPhones; (d) on May 20, 2021, BPD arrested Mubarak with the Subject Telephones (both iPhones) which may have been the phones Mubarak possessed on May 14, 2021; and (e) I know that cell phones are vital tools of the drug trade.

### G. Conclusion

19. Based upon the information above, probable cause exists to believe that the Subject Telephones contain evidence, fruits, and instrumentalities of a violation of 21 U.S.C. § 841. By this Affidavit and Application, I request that the Court issue warrants to seize and search the Subject Telephones for evidence and data/information, in accordance with the procedures listed in Attachment A. Finally, the execution of these warrants do not involve the physical intrusion onto a premise given that it seeks only to examine devices already in law enforcement's possession. Consequently, I submit there is good cause for the Court to authorize execution of the proposed warrants at any time in the day or night.

_____
Samuel Brown
Special Agent - ATF

Sworn to and subscribed before me on June 2nd, 2021.

_____
HON. KEVIN J. DOYLE
U.S. MAGISTRATE JUDGE

11